<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GREGORY HINES, | : | **Hon. Dennis M. Cavanaugh** |
| Petitioner, | : | Civil No. 10-4130 (DMC) |
| v. | : | |
| MICHELLE RICCI, et al., | : | **O P I N I O N** |
| Respondents. | : | |

**APPEARANCES**:

      GREGORY HINES, #831380A
      East Jersey State Prison
      Lock Bag R
      Rahway, New Jersey 07065
      Petitioner <u>Pro Se</u>

      MEREDITH L. BALO, Assistant Prosecutor
      UNION COUNTY PROSECUTOR
      32 Rahway Avenue
      Elizabeth, New Jersey  07202
      Attorneys for Respondents

<u>CAVANAUGH</u>, <u>District Judge</u>:

      Gregory Hines filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. §

2254, challenging a judgment of conviction entered in the Superior Court of New Jersey, Union

County, on January 7, 2000, after a jury found him guilty of first-degree armed robbery and third-

degree possession of a weapon for an unlawful purpose.  The State filed an Answer with the

record.  For the reasons expressed below, this Court will order an evidentiary hearing on Ground

Eight because the Appellate Division's adjudication of the claim was contrary to <u>Strickland v.</u>

Washington, 466 U.S. 668 (1984), and Hill v. Lockhart, 474 U.S. 52 (1985), see 28 U.S.C. §

2254(d)(1), appoint the Federal Public Defender to represent Petitioner, see 28 U.S.C. § 2254

Rule 8(c), and deny habeas relief on the remaining grounds.

## I.  BACKGROUND

On July 28, 1999, a jury found Hines guilty of first-degree armed robbery, see N.J. Stat.

Ann. § 2C:15-1, and third-degree possession of a weapon for an unlawful purpose, see N.J.

Stat. Ann. 2C:39-4 & 39-5.  The Law Division granted the State's post-verdict motion for an

extended sentence and, pursuant to N.J. Stat. Ann. 2C:43-7(a)(2) & (b), on January 7, 2000,

sentenced Petitioner to an extended term of 60 years in prison, with a 23-year period of parole

ineligibility.  Hines appealed, and on November 20, 2001, the Appellate Division affirmed.  See

State v. Hines, Docket No. A-3896-99T4 slip op. (N.J. Super. Ct., App. Div., Nov. 20, 2001)

(ECF No. 17-3).  On May 22, 2002, the New Jersey Supreme Court denied certification.  See

State v. Hines, 172 N.J. 356 (2002) (table).

The Appellate Division outlined the facts presented at trial as follows:

On November 9, 1996, at approximately 3:50 a.m., Patricia Vega, a delivery
person for the Star Ledger, parked her car and entered an apartment building in
Elizabeth to deliver papers.  Upon entering the vestibule area, she was startled to
see a man inside.  She did not get a clear view of him because of inadequate
lighting.  At one point while making her deliveries, when the vestibule was within
her view, Vega observed that the man was still there.  As she left the building,
however, he was gone.

Shortly thereafter, Vega entered another apartment building on her route.  When
she entered the well lit main hall, she saw the same man standing in the corner of
the hall.  He approached Vega, brandishing a knife.  When she pleaded for him
not to hurt her, he put his finger to his lips, signaling her to be quiet.  He
attempted to turn her to face the wall, which made Vega think he was going to
sexually assault her.  She resisted and faced her attacker.  The man demanded
money, and Vega turned over her newspaper collection envelopes.  The assailant

then demanded Vega's car keys. She mistakenly gave him the building keys. As the man left, he warned Vega that he knew who she was and if she reported the robbery he would kill her. He repeatedly stated "I kill you" as he left. Vega was in very close proximity to her attacker and got a very good look at him. The incident lasted approximately one to one-and-one-half minutes.

Realizing she gave defendant the wrong keys and fearing for her life, Vega rang the building superintendent's door bell. Vega was admitted, upset and crying. She resisted the suggestion of the superintendent and his family that they call the police, out of fear for her safety. Nevertheless, the superintendent called the police, who responded to the scene. Still fearing for her safety, Vega gave only a general description of her attacker. She described him as a black man, not too old, dark skin, kind of skinny, wearing a dark coat, and having some hair on his face from not shaving recently. She described the knife as a small folding pocketknife (not new and shiny, but not too old).

Later that day, at approximately 9:21 p.m., defendant was arrested on unrelated charges in the same Elizabeth neighborhood. He was wearing a large black and gold down jacket and had in his possession a folding pocketknife. When shown the knife at trial, Vega was 90% sure it was the one brandished by her assailant. When shown at trial a photo taken of defendant at the time of his arrest, which was the same evening she was robbed, she testified "I can tell 99 percent - that this is the way he was dressing that day he attacked me."

Defendant was taken into custody upon his arrest. On November 15, 1996, a physical line-up was conducted in the Union County Jail. Vega positively identified defendant as her assailant. Proof of this out-of-court identification was admitted at trial. Vega also made an in-court identification of defendant at trial.

(ECF No. 17-3 at 3-5.)

On or about July 15, 2002, Hines filed a state petition for post-conviction relief, arguing that counsel was constitutionally ineffective. He later filed a supporting affidavit in which he averred facts showing that counsel was constitutionally ineffective during plea negotiations. (ECF No. 17-8 at 86-88.) Without conducting an evidentiary hearing, by order filed March 22, 2007, Judge Scott J. Moynihan denied post-conviction relief. (ECF No. 17-8 at 62-84.) Hines appealed, and on May 3, 2010, the Appellate Division affirmed. State v. Hines, 2010 WL

1753316 (N.J. Super. Ct., App. Div., May 3, 2010).  The New Jersey Supreme Court denied

certification on July 19, 2010.  See State v. Hines, 203 N.J. 96 (2010) (table).

On August 4, 2010, Hines executed the § 2254 Petition before this Court.  The Clerk

accepted it for filing on August 12, 2010.  After this Court notified Petitioner of his rights

pursuant to Mason v. Myers, 208 F. 3d 414 (3d Cir. 2000), Hines withdrew Ground Seven and

elected to proceed with the other grounds.  (ECF No. 13.)  The Petition presents the following

grounds:

Ground One:  COMMENTS MADE BY THE PROSECUTOR DURING
SUMMATION DEPRIVED PETITIONER DUE PROCESS.

Ground Two:  THE TRIAL COURT'S JURY INSTRUCTION RELATING TO
IDENTIFICATION WAS INADEQUATE AND DENIED PETITIONER DUE
PROCESS.

Ground Three:  THE STATE VIOLATED PETITIONER'S SIXTH
AMENDMENT RIGHT TO COUNSEL BY CONDUCTING A LINE-UP
WITHOUT NOTIFICATION TO COUNSEL AND WITHOUT COUNSEL
BEING PRESENT.

Ground Four:  ADMISSION OF EVIDENCE OF PETITIONER'S
IDENTIFICATION VIOLATED PETITIONER'S DUE PROCESS RIGHTS.

Ground Five:  THE IDENTIFICATION OF THE PETITIONER VIOLATED
THE FOURTH AMENDMENT SINCE NO PROBABLE CAUSE WAS
ESTABLISHED TO AUTHORIZE THE LINE-UP IN THE VEGA CASE.

Ground Six:  THE ADMISSION OF EVIDENCE REGARDING PETITIONER'S
PRIOR CRIMINAL HISTORY VIOLATED HIS RIGHT TO DUE PROCESS.

Ground Seven:  [withdrawn by Petitioner in ECF No. 13]

Ground Eight:  TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO
PROPERLY ADVISE PETITIONER REGARDING THE STATE'S PLEA
OFFER.

Ground Nine:  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
TESTIFY IN ORDER TO BOLSTER ALIBI WITNESS TESTIMONY.

Ground Ten:  TRIAL COUNSEL WAS INEFFECTIVE BY NOT OBJECTING
TO THE PROSECUTOR'S CHARACTERIZATION OF DEFENSE ALIBI
WITNESS AS "PRACTICED" AND "WELL COACHED."

(ECF No. 1-2 at 2, 3, 4, 5, 6, 7.)

## II.  STANDARD OF REVIEW

Section 2254(a) of title 28 of the United States code gives this Court jurisdiction to

entertain a habeas petition as follows:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal

court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v.

Pinholster, 131 S. Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only

claims alleging that a person is in state custody "in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a).  The AEDPA further limits a federal court's

authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on

the merits.[1]  See 28 U.S.C. § 2254(d).  If a claim has been adjudicated on the merits in state court

---

[1] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state
court has made a decision that finally resolves the claim based on its substance, not on a
procedural, or other, ground." Lewis v. Horn, 581 F. 2d 92, 100 (3d Cir. 2009) (quoting Thomas
v. Horn, 570 F. 3d 105, 117 (3d Cir. 2009)).  "Section 2254(d) applies even where there has been
a summary denial." Cullen, 131 S.Ct. at 1402.  "In these circumstances, [petitioner] can satisfy
the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no

(continued...)

proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[2] Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." Parker, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the

_____

[1](...continued)
reasonable basis' for the [state court's] decision." Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011)).

[2] However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." Lewis at 100 (quoting Appel v. Horn, 250 F. 3d 203, 210 (3d Cir. 2001)).

"'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle from th[e Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams,

529 U.S. at 413. However, under § 2254(d)(1), "an *unreasonable* application of federal law is

different from an *incorrect* application of federal law." Harrington, 131 S. Ct. at 785 (quoting

Williams at 410). As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could disagree on
> the correctness of the state court's decision . . . . Evaluating
> whether a rule application was unreasonable requires considering
> the rule's specificity. The more general the rule, the more leeway
> courts have in reaching outcomes in case-by-case determinations.
> It is not an unreasonable application of clearly established Federal
> law for a state court to decline to apply a specific legal rule that has
> not been squarely established by [the Supreme] Court.

Harrington, 131 S. Ct. at 786 (citations and internal quotation marks omitted).[3]

"This is a difficult to meet, and highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 131

S. Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden

of proof, and review under § 2254(d) is limited to the record that was before the state court that

adjudicated the claim on the merits. Id.

---

[3] See also Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no
clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that
the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal
quotation marks omitted).

# III.  DISCUSSION

## A.  Due Process - Prosecutorial Misconduct (Ground One)

In Ground One, Hines contends that the prosecutor's comments during summation violated due process.  As factual support, he states:  the prosecutor vouched for the credibility of the victim when he said that "she's telling the truth, cause this is an example of her honesty;" the prosecutor attacked the credibility of the alibi witness's ability to recall what Hines had worn on the night of the incident; the prosecutor labeled the alibi witness - Hines's mother - as a "practiced" and "well coached" witness; the prosecutor inflamed the jury when he said that the victim didn't turn around for fear of being raped; and, in discussing the date when Hines's mother told his attorney about the alibi, the prosecutor stated that the jury does not have testimony from Hines's attorney or her investigator.  (ECF No. 1-2 at 2.)

Hines presented the issues raised in Ground One on direct appeal.  The Appellate Division rejected the claims as follows:

> Defendant did not object to any of these comments.  We must therefore determine not only whether the comments constituted error, but whether they constituted plain error.  We will not disturb the verdict unless we are satisfied that any error had the clear capacity to produce an unjust result.
>
> The comments complained of did relate to the evidence, and they were made in the context of proper arguments based on the evidence.  The "practiced witness" comment, for example was in the context of arguing the questionable credibility of a witness who had given alibi testimony on several occasions, and who thus knows what to say and how to say it.  While this argument was proper, the added comment that Ms. Hines was well-coached could reasonably be interpreted to imply some impropriety on defense counsel's part.  This comment was improper.  However, it was fleeting and relatively inconsequential.  It was not of the blatant and egregious kind of attack that we have condemned.  This did not rise to the level of plain error, warranting reversal.

We find no error in the remaining comments we have described. The prosecutor was permitted to argue that the jury could disregard Ms. Hines' alibi testimony as fabricated, by relying, at least in part, on the unlikelihood that she has been in the presence of someone charged with a crime, in a place other than the crime scene at the time of the crime, on three occasions (including this trial). The final comment, read in context, was not an effort to shift the burden of proof to defendant, but to discredit Ms. Hines' testimony and emphasize the strength of the State's case on the critical identification issue.

The remaining instances of alleged improper summation comments as well as the point raised by defendant in his supplemental pro se brief are without sufficient merit to warrant discussion in a written opinion.

(ECF No. 17-3 at 22-24) (citations omitted).

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." Id. at 642; see also Greer v. Miller, 483 U.S. 756, 765 (1987) (To violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted). It is not enough to show that the prosecutor's conduct was universally condemned. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. See Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

Vouching is a form of prosecutorial misconduct. Improper vouching is "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." United States v. Walker, 155

9

F.3d 180, 184 (3d Cir. 1998); see also United States v. Lore, 430 F.3d 190, 211 (3d Cir. 2005) (Vouching occurs when a prosecutor "(1) assures the jury that the testimony of a government witness is credible, and (2) . . . bases his assurance on either his claimed personal knowledge or other information not contained in the record"). The Supreme Court has observed that "[t]he prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 19 (1985).  However, where the "prosecutor's statement of his belief that respondent intended to commit a fraud contained no suggestion that he was relying on information outside the evidence presented at trial [and h]e supported his comment by referring to respondent's own testimony . . . when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record." Id.; see also Walker, 155 F.3d at 184 ("[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching").

"On habeas review, however, prosecutorial misconduct such as vouching does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial. Thus, habeas relief is not available simply because the prosecutor's remarks were undesirable or

even universally condemned.  The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Lam v. Kelchner, 304 F.3d 256, 271 (3d Cir. 2002) (quoting Darden, 477 U.S. at 180-81) (citation omitted).

Here, the comments to which Petitioner objects did not so infect Petitioner's trial with unfairness as to make the resulting conviction a denial of due process under Donnelly, 416 U.S. at 643.  See Gooding v. Wynder, 2012 WL 207068 (3d Cir. Jan. 25, 2012).  The New Jersey courts' rejection of the prosecutorial misconduct and vouching claims was not contrary to, or an unreasonable application of Supreme Court precedent.  See Lam, 304 F.3d at 272.

B.  Due Process - Failure to Give Cross-Racial Identification Instruction (Ground Two)

In Ground Two Hines claims that the trial court's failure to give the cross-racial identification instruction requested by defense counsel violated due process.  As factual support, Hines states:

> 1.  The petitioner, Mr. Hines, is African-American.  The victim, Ms. Vega, was not.  Nearly a week after the incident, Ms. Vega viewed a line-up at the Union County Jail.  Petitioner was one of six men in the line-up, she chose Petitioner.
>
> 2.  The individual who arranged the line-up stated that petitioner had a mustache and part beard and that he was darker than the others in the line-up.  (5T-172-10 to 17)
>
> 3.  A month after viewing the line-up, Ms. Vega described her assailant as a "black person, not too old, with dark skin, kind of skinny, wearing a dark coat." She did not mention facial hair.  She recalled that she had seen the man for seconds at one location, where she saw the side of his face and about a minute at the location where she was robbed.  She had never seen the man before.  She stated she was never shown photographs by the police.  She had apparently seen the petitioner at a court proceeding prior to trial.

4. Based upon the above, petitioner's counsel requested a cross-racial identification charge directing the jury that . . . it could consider the race of the victim verses that of the petitioner as it relates to the accuracy of the victim making a cross-racial identification. The judge denied this request.

(ECF No. 1-2 at 3.)

Petitioner presented this ground on direct appeal, relying on State v. Cromedy, 158 N.J. 112 (1999). In Cromedy, the New Jersey Supreme Court held that "[a] cross-racial instruction should be given only when, as in the present case, identification is a critical issue in the case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability[, such as] forensic evidence or other eyewitness account." Id. at 132.[4] Citing Cromedy, the Appellate Division rejected the claim as follows:

> In ruling upon defendant's request at trial for the cross-racial identification charge, Judge Moynihan recounted in detail the various items of evidence corroborating Vega's identification and giving it independent reliability, as contrasted to and distinguished from the factual circumstances in Cromedy. He noted, for example, that Vega's initial description to the police, that defendant was apprehended the same night in close proximity to the Vega robbery, that he possessed a pocketknife matching the description of that brandished by Vega's attacker and was wearing clothes matching the description given by Vega, that Vega positively identified defendant at a fairly assembled and conducted line-up only six days after the crime, that Vega had a good opportunity to observe her attacker, and that defendant lives in the immediate neighborhood of the Vega robbery.
>
> In light of the reasons expressed at length by Judge Moynihan on this issue on July 28, 1999, we find no abuse of discretion in his refusal to give a cross-racial identification charge.

(ECF No. 17-3 at 16.)

_____

[4] In State v. Henderson, 208 N.J. 208 (2011), the New Jersey Supreme Court held that a jury instruction on cross-racial identification should be given whenever cross-racial identification is in issue. Id. at 299.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." Id.; see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]") (citations and internal quotation marks omitted). As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. *See McMillan v. Pennsylvania,* 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).
>
> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner

13

> could obtain habeas corpus relief without making such a showing,
> then district courts in habeas corpus cases would sit as super state
> supreme courts for the purpose of determining whether jury
> instructions were correct under state law with respect to the
> elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

To the extent Hines contends that the failure to give a cross-racial instruction violated

Cromedy, the claim fails because Supreme Court precedent does not require a cross-racial

instruction, see United States v. Suggs, 230 Fed. App'x 175, 184 (3d Cir. 2007) ("our Court has

no . . . requirement" for cross-racial instruction), and "the fact that the instruction was allegedly

incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72; see also

Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the

correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal

rights and may not obtain habeas relief"). Hines is not entitled to habeas relief on Ground Two

because the New Jersey courts' rejection of the claim was not contrary to, or an unreasonable

application of any Supreme Court holding. See Smith v. Spisak, 558 U.S. 139, __, 130 S. Ct.

676, 684 (2010) (no right to habeas relief if Supreme Court has not previously held jury

instruction unconstitutional for same reason).

C.  No Counsel at Lineup (Ground Three)

In Ground Three, Hines asserts that "THE STATE VIOLATED PETITIONER'S SIXTH

AMENDMENT RIGHT TO COUNSEL BY CONDUCTING A LINE-UP WITHOUT

NOTIFICATION TO COUNSEL AND WITHOUT COUNSEL BEING PRESENT." (ECF No.

1-2 at 3.) As factual support, he states that on November 13, 1996, while he was being held at

Union County Jail on an unrelated offense, he was interviewed by intake and requested

14

representation by the public defender in that unrelated case.  He further alleged that on November 15, 1996, authorities placed him in a line-up on the Vega incident without counsel, and Vega identified him as the perpetrator of the robbery in the Vega case.  Id.

Hines presented this claim to the Appellate Division on direct appeal.  The Appellate Division noted that the lineup in the Vega case took place after Hines was in jail on an unrelated charge of receiving stolen property and fraudulent use of credit card charges involving a victim named Morris, and after Hines had applied for representation by a public defender in the Morris case.  Relying on McNeil v. Wisconsin, 501 U.S. 171 (1991), the Appellate Division ruled that, because the Vega charges were based on an incident unrelated to the Morris charges, "[f]or purposes of Sixth Amendment analysis, the Vega robbery was unrelated to defendant's original charges [and Hines] had no right to counsel at the Vega line-up by virtue of his earlier assertion of a right to counsel on the original Morris charges."  (ECF No. 17-3 at 11.)  The Appellate Division "further conclud[ed] that [Hines] had no independent right to counsel with respect to Vega at the time of the line-up because no charges had yet been issued against [Hines] pertaining to the Vega incident."  Id.

The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings, including arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea.  See Missouri v. Frye, 132 S.Ct. 1399, 1405 (2012). As the Supreme Court explained in United States v. Wade, 388 U.S. 218, 236-37 (1967), "[s]ince it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little

15

doubt that for Wade the postindictment lineup was a critical stage of the prosecution at which he was as much entitled to such aid (of counsel) . . . as at the trial itself." (citation, internal quotation marks and footnote omitted). "The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and that a post-indictment lineup is such a 'critical stage.'" <u>Simmons v. United States</u>, 390 U.S. 377, 382-83 (1968).

In <u>Kirby v. Illinois</u>, 406 U.S. 682 (1972), however, a plurality of the Supreme Court held that a suspect does not have a Sixth Amendment right to presence of counsel at a showup[5] which takes place after arrest but before "the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." <u>Id.</u> at 689; <u>but see</u> <u>Moore v. Illinois</u>, 434 U.S. 220, 231 (1977) ("[P]etitioner's Sixth Amendment rights were violated by a corporeal identification conducted after the initiation of adversary judicial criminal proceedings and in the absence of counsel").

In <u>McNeil v. Wisconsin</u>, 501 U.S. 171 (1991), McNeil was taken into custody on a robbery charge and, when he invoked his <u>Miranda</u> right to remain silent, police ended the interview. However, later the same evening, another police officer from another police station visited McNeil in jail because McNeil was a suspect in an unrelated murder investigation; this officer advised McNeil of his <u>Miranda</u> rights, McNeil signed a form waiving his <u>Miranda</u> rights, and then McNeil admitted he was aware of the murder but said he was not involved. Two days later, the police officer returned with two detectives investigating the murder, McNeil again waived his <u>Miranda</u> rights, and this time McNeil admitted his involvement in the murder. After

---

[5] "There is no reason . . . to hold that a one-on-one identification procedure is not subject to the same requirements as a lineup." <u>Moore v. Illinois</u>, 434 U.S. 220, 229 (1977).

questioning Pope, whom McNeil had also implicated, the police returned two days later, obtained another <u>Miranda</u> waiver, and McNeil admitted that he had lied about Pope's involvement.  On direct appeal, McNeil argued that, because he had invoked his right to counsel when he made an initial court appearance with an attorney in the robbery case, any subsequent waiver of <u>Miranda</u> regarding the murder investigation was invalid.  After the Wisconsin Supreme Court rejected the claim, the Supreme Court granted certiorari and also rejected McNeil's argument:  "[I]f we were to adopt petitioner's rule, most persons in pretrial custody for serious offenses would be *unapproachable* by police officers suspecting them of involvement in other crimes, *even though they have never expressed any unwillingness to be questioned*.  Since the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser."  <u>Id</u>. at 181 (emphasis in original).  The Supreme Court held that "[t]he Sixth Amendment right, however, is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment . . . .  Because petitioner provided the statements at issue here before his Sixth Amendment right to counsel with respect to the [murder] offenses had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case."  <u>Id.</u> at 175-76.

    Given that the Supreme Court has held that the Sixth Amendment right to counsel is offense specific, and that the right to counsel does not attach until an adversary judicial criminal proceeding is commenced, the New Jersey courts' determination that Hines had no Sixth

Amendment right to counsel at the Vega lineup is not contrary to, or an unreasonable application of Supreme Court precedent.

D.  Due Process - Admission of Identification by Vega (Ground Four)

In Ground Four, Hines asserts that "ADMISSION OF EVIDENCE OF PETITIONER'S IDENTIFICATION [BY VEGA] VIOLATED PETITIONER'S DUE PROCESS RIGHTS." (ECF No. 1-2 at 4.)  As factual support, Hines states:

> 1.  Six members of the Union County Jail, including petitioner, participated in a line-up on November 15, 1996.  The line-up was arranged by Don Johnson of the jail. (5T-172-19 to 17)
>
> 2.  Mr. Johnson was provided with a photograph of petitioner.  He chose inmates with hair on their face because petitioner had a mustache and beard, and he chose persons of similar height and weight.  He did not cho[o]se persons with the same skin complexion petitioner's complexion was much darker than the other men in the line-up. (5T-172-10 to 17)
>
> 3.  On the day of the line-up, Ms. Vega was with other people outside the viewing room, she was then asked to go inside, she identified petitioner.  She also identified petitioner at trial.

(ECF No. 1-2 at 4.)

On direct appeal, Hines argued that the lineup violated due process because Hines was the person in the lineup with the darkest skin.  The Appellate Division rejected this claim:

> Finally, we reject defendant's contention that the line-up procedure was impermissibly suggestive, resulting in a very substantial likelihood of irreparable misidentification.  Neil v. Biggers, 409 U.S. 188 . . . (1972) . . . .  The line-up consisted of six individuals, all dressed the same in their jail khaki's.  All turned to face Vega simultaneously.  All were black males of similar size and age, with some facial hair growth.  The other five were chosen, not based on any description from a witness, but based on defendant's actual characteristics and features.  Although defendant's complexion may have been somewhat darker than the others, that alone did not constitute a noticeable overall dissimilarity.  Vega recognized defendant quickly and definitively.  Photographs of all participants were preserved and produced at trial.  No one suggested to Vega who she should

18

select or that she should make a selection.  The procedure was, under the totality
of the circumstances, fair.

(ECF No. 17-3 at 14-15.)

The Supreme Court has observed that improper pretrial identification procedures by

police may cause witnesses to misidentify a criminal.  See Simmons v. United States, 390 U.S.

377, 383 (1968).  An identification procedure may be deemed unduly and unnecessarily

suggestive if it is based on police procedures that create "a very substantial likelihood of

irreparable misidentification."  Id at 384.  In that case, "the witness thereafter is apt to retain in

his memory the image of the [misidentification] rather than that of the person actually seen,

reducing the trustworthiness of subsequent lineup or courtroom identification."  Id. at 383-84.  "It

is the likelihood of misidentification which violates a defendant's right to due process . . . .

Suggestive confrontations are disapproved because they increase the likelihood of

misidentification."  Neil v. Biggers, 409 U.S. 188, 198 (1972).

The Supreme Court has held that, even if an identification procedure is unnecessarily

suggestive, admission of the suggestive identification does not violate due process so long as the

identification possesses sufficient aspects of reliability, Manson v. Brathwaite, 432 U.S. 98, 106

(1977), for reliability is the "linchpin in determining the admissibility of identification

testimony."  Id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2008).  The

central question is "'whether under the totality of the circumstances the identification was

reliable even though the confrontation procedure was suggestive."  Brathwaite, 432 U.S. at 106

(quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d

Cir. 2008).  Factors to be considered include "the opportunity of the witness to view the criminal

19

at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." <u>Biggers</u>, 409 U.S. at 199. Significantly, the Supreme Court has ruled that, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. <u>See</u> <u>Coleman v. Alabama</u>, 399 U.S. 1, 7 (1970).

Here, the New Jersey courts' determination that the lineup was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Nor was the New Jersey courts' determination that the identification possessed sufficient aspects of reliability contrary to or an unreasonable application of <u>Biggers</u>. <u>See</u> <u>Biggers</u>, 409 U.S. at 199. Under these circumstances, the adjudication of Petitioner's identification claim was not contrary to, or an unreasonable application of <u>Biggers</u> and other applicable Supreme Court jurisprudence. Petitioner is not entitled to habeas relief on Ground Four.

E.  Lineup Violated Fourth Amendment (Ground Five)

In Ground Five, Hines asserts that "THE IDENTIFICATION OF THE PETITIONER VIOLATED THE FOURTH AMENDMENT SINCE NO <u>PROBABLE CAUSE</u> WAS ESTABLISHED TO AUTHORIZE THE LINE-UP IN THE VEGA CASE." (ECF No. 1-2 at 4.) As factual support, Hines states that, although a judge granted the state's ex parte application to compel Hines to participate in a line-up concerning seven other robberies, the state conducted a line-up for the Vega robbery without having presented probable cause for a line-up in that case. <u>Id.</u> at 4-5.) Hines presented this claim on direct appeal, relying on <u>State v. Foy</u>, 146 N.J. Super.

20

378 (Law Div., 1976), and <u>State v. Hall</u>, 183 N.J. Super, 224, 232 (App. Div., 1982), <u>aff'd</u>, 93

N.J. 552 (1982).

> The Appellate Division
>
> reject[ed petitioner's] contention that, under the circumstances of this case, absence of counsel at the line-up requires suppression of the line-up evidence under <u>State v. Hall</u>, 93 N.J. 552 . . . . The Court there authorized pre-arrest investigatory detentions, upon a showing of a specified evidential basis, and subject to certain procedural safeguards . . . . Significantly, <u>Hall</u> was decided on Fourth Amendment grounds, the Court considering an application for detention for a line-up the functional equivalent to an application for a search warrant . . . . [W]e do not consider the presence of counsel at an investigatory phase line-up to be constitutionally mandated, in order to protect the affected person from an unreasonable search and seizure. Further, in this case there was no investigative detention, since defendant was already in custody. Finally . . , we are satisfied that the record contains sufficient evidence, existing at the time of the line-up, to satisfy the evidential requisites of <u>Hall</u> and Rule 3:5A-4 . . . . We reject defendant's contention that there was not sufficient evidence to establish a reasonable and well-grounded basis to believe that defendant robbed Vega on November 9, 1996.

(ECF No. 17-3 at 12-14.)

In <u>State v. Hall</u>, 93 N.J. 552 (1983), the New Jersey Supreme Court ruled that the Fourth

Amendment authorizes a state court to compel an unarrested and uncharged suspect to submit to

a lineup under certain circumstances. <u>Id.</u> at 559. Citing <u>Davis v. Mississippi</u>, 394 U.S. 721, 726-

27 (1969), <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), <u>United States v. Wade</u>, 388 U.S. 218 (1967), and

<u>Kirby v. Illinois</u>, 406 U.S. 682 (1972), the New Jersey Supreme Court reasoned that "an

application to detain a suspect for the purpose of conducting a lineup must be considered as the

functional equivalent of an application for issuance . . . of a search warrant." <u>Hall</u> at 558

(citation and internal quotation marks omitted).

In Davis v. Mississippi, 394 U.S. 721, the Supreme Court held that where the police detained and obtained fingerprints from Davis in the absence of a warrant or probable cause, detention violated the Fourth Amendment and the admission of evidence showing that his fingerprints matched those from the scene violated the Exclusionary Rule, since all evidence obtained by an unconstitutional search and seizure, including fingerprint evidence, is inadmissible. "[T]he general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context." Davis, 394 U.S. at 728.

The Appellate Division correctly ruled that Davis does not apply in this case because Hines was already in custody on another charge when the Vega lineup took place. Similarly, none of the other Supreme Court cases cited in Hall clearly prohibited the admission of Vega's identification under the Fourth Amendment. Terry held that a police officer may stop and frisk a person for weapons in the absence of probable cause to arrest where the officer has "reasonable grounds to believe that petitioner was armed and dangerous, and it was necessary for the protection of himself and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized." Terry, 392 U.S. at 30. In Wade, the Supreme Court held that a postindictment lineup was a critical stage of the prosecution and that a postindictment lineup without counsel or an intelligent waiver violated the Sixth Amendment. See Wade, 388 U.S. at 237-38. In Kirby, the Court held that a suspect has no Sixth Amendment right to counsel at a police station showup after his arrest but before he had been indicted or otherwise formally charged. See Kirby, 406 U.S. at 690. As Hines cites no Supreme Court precedent showing that the Vega lineup (which took place while Hines was properly detained on unrelated charges)

22

violated the Fourth Amendment, he has not shown that admission of the identification was

contrary to, or an unreasonable application of Supreme Court Fourth Amendment precedent.

F.  Due Process - Admission of Testimony about Prior Trials (Ground Six)

In Ground Six, Hines argues that the admission of evidence regarding his prior criminal

history violated due process.  As factual support, Hines states:

> 1.  The trial in this matter concerned the robbery of Patricia Vega on November 9,
> 1996 in Elizabeth, New Jersey.  In his opening to the jury, the prosecutor
> informed the jury that "petitioner had been arrested on an unrelated charge and
> was taken into custody."  (5T-15 - 10 to 10)
>
> 2.  Ms. Vega testified that, when shown petitioner's jacket, she had seen the coat
> at the last trial.  (5T-104 -1 to 6)
>
> 3.  Another witness Mr. Johnson also testified about the last trial.  (5T-166-7 to 8)
>
> 4.  A police officer testified that when petitioner was arrested on the evening of
> November 9, 1996 he was in possession of a knife.  (5T-131-1 to 25)
>
> 5.  During cross-examination of petitioner's mother, his alibi witness, the
> prosecutor elicited testimony that she testified concerning three separate incidents
> as an alibi witness in 1994 and 1998 and this case.  (6T-72-1 to 25)

(ECF No. 1-2 at 5.)

Hines raised this ground on direct appeal, arguing that the admission of the above

evidence violated his right to the presumption of innocence:  "The most logical interpretation of

this testimony was that the defendant had been arrested, charged and tried for criminal acts in

addition to the incident in question.  The only conclusion a jury could reach was that the

defendant was a repetitive criminal wanted for numerous criminal acts."  (ECF No. 17-1 at 39.)

He further argued that the instructions "given by the Court as to the use of this testimony could

not ameliorate the overwhelming prejudice." Id. at 40.  The Appellate Division rejected the

claim:

> The State elicited testimony that defendant was arrested on unrelated charges the
> evening of the Vega robbery, and that he possessed a folding pocketknife.  The
> prosecutor referred to this anticipated evidence in his opening statement.  Vega
> identified the knife, with 90% certainty, as the one used by her assailant.
> Therefore, the possession of the knife by defendant on the same day as the robbery
> was highly probative on the issue of identification.  The limited purpose for which
> evidence of the arrest was permitted was to provide the jury with an explanation
> of the circumstances under which the police were permitted to seize an item from
> the defendant's person, without giving the impression that the police acted
> improperly or arbitrarily.  Judge Moynihan gave a clear limiting instruction
> immediately after introduction of this evidence and again in his final charge.
>
> Defendant relies on State v. Neal, 229 N.J. Super. 28 (App. Div. 1988), where we
> held that evidence of a defendant's arrest on unrelated charges violated Evid. R.
> 55, the predecessor to N.J.R.E. 404(b).  There, however, "there was absolutely no
> need to tell the jury that defendant's presence at police headquarters resulted form
> his arrest on other charges."  Neal . . . .  In other words, evidence that defendant
> was present at police headquarters, without mentioning that he had an outstanding
> warrant on other charges, on which he was arrested, would have been complete
> and in no way misleading to the jury.  Here, however, it was not the mere contact
> between defendant and the police on the evening of November 9, 1996 that was
> being offered to the jury.  The important and highly probative aspect of that
> contact was the search of defendant and the seizure of the knife.  A legitimate
> "need to tell the jury" of the arrest existed, and with the limiting instruction there
> was no N.J.R.E. 404(b) violation.

(ECF No. 17-3 at 17-18.)

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned

review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n.6

(1983).  The admissibility of evidence is generally a question of state law which is not cognizable

under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal

habeas court, however, cannot decide whether the evidence in question was properly allowed

under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the

contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").

In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court held that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) did not violate due process.

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence.

Id. at p. 70.

In cases not governed by the AEDPA, the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial." Keller v. Larkins, 251 F. 3d 408, 413 (3d Cir. 2001); see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir. 1989) ("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"); Bisaccia v. Attorney General of State of New Jersey, 623 F. 2d 307, 313 (3d Cir. 1980) (when "the probative value of . . . evidence, though relevant, is greatly outweighed by the prejudice to the accused

25

from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"). But § 2254(d)(1) of the AEDPA does not permit this Court to grant habeas relief based on Third Circuit precedent.

Moreover, this Court is not aware of any Supreme Court case clearly establishing that the admission of other crimes or bad acts evidence constitutes a violation of federal constitutional rights, and Supreme Court cases suggest the contrary. See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991) (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction).

"[The Supreme] Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 121 (2009) (citation and internal quotation marks omitted). Because the admission of the testimony concerning Petitioner's arrest and other criminal proceedings was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Six. See Albrecht v. Horn, 485 F. 3d 103, 128 (3d Cir. 2007) ("Where evidence of a defendant's prior bad acts is admitted, a defendant's interests are protected by a limiting instruction, which mitigates the possibility of prejudice"); Charlton v. Franklin, 503 F. 3d 1112, 1115 (10th cir. 2007) (state court's admission of evidence of petitioner's prior bad acts did not render trial fundamentally unfair or warrant habeas relief); Minett v. Hendricks, 135 Fed. App'x 547, 553 (3d Cir. 2005) ("Minett cites no Supreme Court

26

case clearly establishing the admission of 'other crimes' evidence constitutes a violation of federal fair trial rights").

G.  Ineffective Assistance of Counsel During Plea Negotiations (Ground Eight)

Hines argues in Ground Eight that counsel was constitutionally "ineffective in failing to properly advise petitioner regarding the state's plea offer." (ECF No. 1-2 at 6.)  As factual support for Ground Eight, Hines states:

> 1.  Petitioner was charged under five indictments under the State's plea offer, petitioner would plead to all charges and receive an aggregate sentence of 32 years with a 16-year minimum term.

> 2.  Counsel did not advise petitioner that, upon conviction at trial of the robbery charge that is the subject of this Habeas Petition, petitioner could receive a life sentence.

> 3.  Counsel instead led petitioner to believe that petitioner was facing a maximum of 40 years.  As a result, petitioner rejected the State's offer.

(ECF No. 1-2 at 6.)

This Court notes that the conviction at issue was for first-degree robbery, contrary to N.J. STAT. ANN. § 2C:15-1.  According to N.J. STAT. ANN. § 2C:43-6, a person who has been convicted of a first-degree crime may be sentenced to a "specific term of years which shall be fixed by the court and shall be between 10 years and 20 years," N.J. STAT. ANN. § 2C:43-6(a)(1), and as part of the sentence, the court "may fix a minimum term not to exceed one-half of the term set pursuant to subsection a . . . , during which the defendant shall not be eligible for parole."

In Hines's case, the Law Division granted the state's post-verdict motion to sentence Hines to an extended term as a persistent offender, as defined by N.J. STAT. ANN. §§ 2C:43-

27

7.1(b) and 2C:44-3(a). Sentencing for an extended term is governed by N.J. STAT. ANN. § 2C:43-7, which provides that the extended term for a crime of the first degree "shall be between 20 years and life imprisonment," N.J. STAT. ANN. § 2C:43-7(a)(2), and that the court "may fix a minimum term not to exceed one-half of the term set . . . during which the defendant shall not be eligible for parole or a term of 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment . . ." N.J. STAT. ANN. § 2C:43-7(b). In other words, according to this Court's review of the relevant statutes, the maximum extended term sentence Hines faced for his first-degree robbery conviction was a life sentence, with 25 years of parole ineligibility. He received a sentence of 60 years, with 23 years of parole ineligibility.

(1) Clearly Established Supreme Court Holdings

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine

28

whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693. "[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (citations omitted). The reasonable probability standard is less demanding than the preponderance of the evidence standard. See Nix v. Whiteside, 475 U.S. 157, 175 (1986); Baker, 177 F.3d at 154.

In Hill v. Lockhart, 474 U.S. 52 (1985), Hill brought a § 2254 petition seeking habeas relief on the ground that, when he pled guilty to first degree murder and theft of property, his attorney had failed to advise him that, as a second offender, he was required to serve one-half of his sentence before becoming eligible for parole. Hill asserted in his habeas petition that his guilty plea was involuntary because his attorney misinformed him as to his parole eligibility date; he asked the court "to reduce his sentence to a term of years that would result in his becoming eligible for parole in conformance with his original expectations." Id. at 55. The district court denied relief without an evidentiary hearing, and the en banc Court of Appeals for the Eighth Circuit affirmed. The Supreme Court "recognized - for the first time - that Strickland applies to advice respecting a guilty plea." Padilla v. Kentucky, 130 S.Ct. 1473, 1485 n.12 (2010). The Hill Court "h[e]ld, therefore, that the same two-part Strickland v. Washington test applies to

29

challenges to guilty pleas based on ineffective assistance of counsel." <u>Hill</u>, 474 U.S. at 58. "I]n

the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than

a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u>,

<u>supra</u>, and <u>McMann v. Richardson</u>, <u>supra</u>." <u>Hill</u>, at 58. "Where, as here, a defendant is

represented by counsel during the plea process . . , the voluntariness of the plea depends on

whether counsel's advice 'was within the range of competence demanded of attorneys in criminal

cases.'" <u>Hill</u>, 474 U.S. at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)).

Under <u>Strickland</u>, as modified by <u>Hill v. Lockhart</u>, the prejudice requirement "focuses on

whether counsel's constitutionally ineffective performance affected the outcome of the plea

process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

    In 2010, the Supreme Court applied <u>Strickland</u> and <u>Hill</u> to a defendant who pled guilty,

alleging that his attorney was ineffective in misadvising him about the potential for deportation

as a consequence of his guilty plea. <u>See</u> <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473 (2010). <u>Padilla</u>

came to the Supreme Court by way of a state petition for post-conviction relief wherein Padilla

alleged that he pled guilty to a deportable drug charge relying on his counsel's erroneous advice

that he did not have to worry about his immigration status since he had been in the country so

long, and that he would have insisted on going to trial if he had received accurate advice. The

Supreme Court of Kentucky denied relief without an evidentiary hearing on the ground that

counsel's performance was not deficient, since the Sixth Amendment does not protect a criminal

defendant from erroneous advice about deportation consequences of a guilty plea. The Supreme

Court granted certiorari and reversed, holding that, "as a matter of federal law, deportation is an integral part - indeed, sometimes the most important part - of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes," id. at 1480 (footnote omitted), and that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." Id. at 1478. The Court rejected the notion that deficient performance be limited to affirmative misadvice, finding that "[s]ilence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement,'" (quoting Libretti v. United States, 516 U.S. 29, 50-51 (1995)), and that counsel's failure to provide a client with available advice about the deportation penalty "'clearly satisfies the first prong of the Strickland analysis.'" Padilla, 130 S.Ct. at 1484 (quoting Hill, 474 U.S. at 62).

Last year, the Supreme Court decided Lafler v. Cooper, 132 S.Ct. 1376 (2012), and Missouri v. Frye, 132 S.Ct. 1399 (2012). In Lafler, the Court affirmed an order granting a writ of habeas corpus under § 2254 to Anthony Cooper on his Sixth Amendment claim that he rejected a plea offer with a recommended sentence of 51 to 85 months on the basis of deficient advice of counsel and, after a full and fair trial, he was found guilty and received a sentence harsher than that offered in the rejected plea bargain, i.e., a mandatory minimum sentence of 185 to 360 months in prison. In Lafler, the state conceded that counsel's advice - that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist - was constitutionally deficient performance. In affirming the order granting a writ under § 2254, the Supreme Court found that the state courts' rejection of Cooper's ineffective assistance claim was contrary to the Supreme Court's holdings in Strickland, Hill, and Padilla. The Supreme Court

31

ruled that the Sixth Circuit had properly found that the state court's decision was contrary to the following clearly established test for prejudice under Strickland and Hill in the context of a rejected plea bargain:

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385.

The Lafler Court reasoned that "the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." Lafler, 132 S.Ct. at 1386 (citing Glover v. United States, 531 U.S. 198, 203 (2001) for the proposition that ineffective assistance of counsel during sentencing can result in Strickland prejudice because "any amount of [additional] jail time has Sixth Amendment significance").

Missouri v. Frye, 132 S.Ct. 1399, came to the Supreme Court by way of the state's appeal from a decision of the state court of appeals reversing an order denying post-conviction relief on Frye's claim that defense counsel's deficient performance in failing to communicate the terms of a plea offer prejudiced Frye, in that Frye ultimately pled guilty without a plea bargain and was sentenced to three years in prison, a harsher sentence than what the prosecutor had offered in the plea. At an evidentiary hearing in the state court, Frye testified that he would have entered a guilty plea to the misdemeanor had he known that the state had offered a plea to a reduced charge

- a misdemeanor - with a recommended 90-day sentence.  The Missouri trial court denied relief, but the court of appeals reversed, finding that the failure to communicate the plea offer was deficient performance under Strickland, and that this deficient performance caused prejudice because Frye pled guilty to a felony with a maximum sentence of four years, instead of the one year maximum sentence for a misdemeanor.

The Supreme Court explained that Hill v. Lockhart "established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland," Frye, 132 S.Ct. at 1405, and that Padilla "made clear that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment [and] rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel," id. at 1406 (citations and internal quotation marks omitted).  The Supreme Court agreed that defense counsel was constitutionally deficient in failing "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id. at 1408.  Next, the Court held that "[i]n order to complete a showing of Strickland prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." Id. at 1410.

(2) State Court Adjudication of Hines's Claim

In this case, Hines raised his ineffective assistance during plea bargaining claim in his state petition for post-conviction relief.  Hines submitted his affidavit in which he averred:

1. I am Mr. Gregory Hines, the petitioner in the above mentioned case, this affidavit relates to Trial counsel's failure to properly advise me of the time exposure I faced if sentenced to an Extended Term if convicted.

2. Petitioner was arrested on November 9, 1996 for possession of a stolen credit card, a case unrelated to the case at bar. Six day's [sic] later on November 15, 1996 this petitioner was compelled to stand before a physical line-up as a robbery suspect in a number of robberies committed in the city of Elizabeth, New Jersey. Petitioner was identified by three allege[d] victims, and subsequently indicted on five separate robberies.

3. Petitioner was assigned counsel from the Public Defenders office on November 21, 1996. Late in 1997 petitioner received his discovery, and along with the discovery was a plea offer from the state. Of the five indictments the states focus was on what they felt were their strongest cases of the five indictments, those being the Morris case, Ind. #97-02-00202 which they offered a 16/8 stipulation, and the Vega case, Ind. #97-02-00223 which the offer was again 16/8 stip for an agg. sentence of 32/16, and the remaining cases would run c/c with the 32/16 sentence.

4. Shortly after receiving my discovery counsel came to visit me at the County Jail to discuss the states offer. During this discussion I informed counsel that I wouldn't plead to these trumped up charges since I didn't rob anyone, and counsel's response was that I was facing an Extended Term if I went to trial and was convicted. At this point I asked counsel what type of time was I facing if I were to get the Extended Term, and counsels response was, and I quote, "they can double your sentence", end quote. At no time was I ever told that there was a presumptive fifty year term, and or 20 to Life based on the judges findings.

5. Based on these discussions, and withstanding the fact that I had no involvement in these robberies I was being accused of I still had to consider the offer based on counsel's advise, and I reasoned at that time that there wasn't much difference from a 40 year sentence under an extended Term, and the 32/16 being offered by the state, and for that reason I rejected the plea offer and pr[o]ceeded to prepare myself for trial. I was aware that a first degree conviction carries a twenty year term, and if given an Extended Term it was my understanding I faced a maximum of forty years.

6. I was first tried for the Morris robbery Ind. #97-02-00202. This first trial ended in a hung jury relating to the (robbery & assault) in April of 98'. I was retried in December of 98', again for the robbery & assault, at which time I was acquitted of all charges.

34

7.  After the acquittal in the Morris case counsel again came to visit me at the county in [I] believe April 99', and during this visit we discussed the upcoming Vega trial . . . .  During our discussion I posed a question to counsel, I asked that with the acquittal of the Morris case would the state be willing to plead on the remaining cases.  My reason for doing this was because I was truly stressed out from the Morris trial and wanted to end it.  Also I figured since the 32/16 was based on an agg. sentence relating to the Morris and Vega cases, that pleading to just the Vega case I would get a better deal, and avoid the Extended Term.

8.  During this conversation with counsel she stated that she didn't believe the state would be willing to accept a plea at that point.  I was given no reason for that belief, and can't say whether or not counsel even approached the then prosecutor in an attempt to negotiate a plea, but the conversation between counsel and I did take place, and with the Morris case off the table I would have taken a plea to avoid going to trial again, and more importantly to avoid the Extended Term.

9.  I should stress again that counsel and I never had a conversation where counsel stated that an Extended Term has a presumptive 50 yr. term, and we certainly never discussed my exposure to a possible life sentence.  And in regards to my willingness to plead after my acquittal in the Morris case counsel never related to me whether or not she spoke with the prosecutor to negotiate a possible plea on my behalf even though counsel knew my feelings at that point.

10.  The fact that I chose to initially go to trial has know [sic] bearings on my change of heart after the acquittal of the Morris robbery.  I explained to counsel on a number of occasions prior to being tried for the Morris case that if the state came to me with an acceptable offer that I would be willing to plead out just to get it over with.  So it made s[e]nse to me that after the Morris acquittal the chances of being offered a better plea would be feasible since the 32/16 was based on both the Morris and Vega robberies.  So even though I was misadvised on the actual exposure associated with an Extended Term, even having my sentence doubled as stated by counsel wasn't appealing, and I would have avoided trial had the opportunity presented itself to avoid the Extended term by pleading to the Vega robbery even though I wasn't involved, a decision I would have regret[t]ed, but under the circumstances it would have been in my best interest.

11.  I've attached a copy of the original plea offer which demonstrates the Morris case, Ind. #97-02-00202, and the Vega case Ind. #97-02-00223 was the core of the states plea offer, and in light of my Extended Term exposure, even if counsel was correct relating to my sentence being doubled upon conviction, the likelihood that I would have considered a plea after my acquittal of the Morris robbery to avoid the Extended term is very great under those circumstances.

(ECF No. 17-8 at 86-88.)[6]

The Law Division rejected the ineffective assistance of counsel during plea bargaining claim without conducting an evidentiary hearing on the ground that Hines did not satisfy the prejudice prong.  (ECF No. 17-8 at 80.)  The Appellate Division affirmed as follows on the ground that Hines could not show prejudice under Strickland:

> Defendant's first contention is that he is entitled to PCR because he was not properly counseled as to the potential sentence that could be imposed upon him as an extended term offender, both under the "Three Strikes and You're In," N.J.S.A. 2C:43-7.1b, and the discretionary persistent offender statute, N.J.S.A. 2C:44-3a. The affidavit defendant submitted in support of his application for PCR, however, included his assertion that he "would not plead to these trumped-up charges since I didn't rob anyone...." In a later affidavit he reiterated that he "had no involvement in these robberies."
>
> As the Court has most recently stated, "[t]he notion that a defendant can enter a plea of guilty, while maintaining his innocence, is foreign to our state jurisprudence." State v. Taccetta, 200 N.J. 183, 195, 975 A.2d 928 (2009). It logically follows, as the night does the day, that the PCR court could not vacate the jury's verdict because of defendant's asserted innocence even if it were convinced that defendant's attorney did not accurately convey defendant's sentencing exposure. Defendant cannot be heard to complain that he would have accepted the plea offer "while maintaining his innocence." Ibid.
>
> In order to succeed on a claim of ineffective assistance of counsel, a defendant must establish that his counsel's performance was seriously deficient and that the deficient performance prejudiced his right to a fair disposition of the charges. Strickland v. Washington, 466 U.S. 668, 687 . . . (1984); State v. Fritz, 105 N.J. 42, 52-53 . . . (1987). In this case, defendant cannot prove any prejudice from the alleged failure of counsel to provide him with an accurate explanation of his sentencing exposure because he continues to maintain his innocence.

State v. Hines, 2010 WL 1753316 at *2 (N.J. Super. Ct., App. Div., May 3, 2010).[7]

---

[6] The state's plea offer was not attached to the affidavit filed with the record or otherwise included in that record.  However, the state does not dispute the aforesaid terms of the plea offer.

[7] Taccetta does not impose a substantive restriction on Hines's federal claim, as such

(continued...)

36

In this case, the Appellate Division identified Hines's ineffective assistance of counsel during plea bargaining claim but failed to apply <u>Strickland</u>'s prejudice test to assess it.  Rather than applying the prejudice standard of <u>Strickland</u> and <u>Hill</u>,[8] the Appellate Division simply ruled that Hines "cannot prove any prejudice from the alleged failure of counsel to provide him with an accurate explanation of his sentencing exposure because he continues to maintain his innocence." <u>Hines</u>, 2010 WL 1753316 at *2.  An inquiry solely involving whether or not Hines proclaimed innocence, however, is not the correct means by which to address prejudice when assessing a claim of ineffective assistance of counsel in the plea negotiation process.[9]  "By failing to apply <u>Strickland</u> to assess the ineffective-assistance-of-counsel claim [Hines] raised, the state court's adjudication was contrary to clearly established federal law.  And in that circumstance the federal courts in this habeas action can determine the principles necessary to grant relief." <u>Lafler</u>, 132 S.Ct. at 1390.  Because the New Jersey courts' adjudication of Hines's ineffective assistance

_____

[7](...continued)
would violate the Supremacy Clause.  See <u>Villot v. Varner</u>, 373 F.3d 327, 334-35 (3d Cir. 2004).

[8] To establish prejudice where the ineffective advice led to the rejection of a plea offer, a petitioner must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler</u>, 132 S.Ct. at 1385.

[9] "[P]rotestations of innocence are relevant to the <u>Strickland</u> prejudice inquiry" where counsel's advice in petitioner's rejection of a plea was deficient.  <u>Wheeler v. Rozum</u>, 410 Fed. App'x 453 (3d Cir. 2010); <u>see also</u> <u>Griffin v. United States</u>, 330 F.3d 733, 739 (6th Cir. 2003) (remanding for evidentiary hearing on whether § 2255 movant would have accepted guilty plea where fact that he maintained his innocence was not, on its own, dispositive of whether he had been prejudiced).  Moreover, "the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."  <u>North Carolina v. Alford</u>, 400 U.S. 25, 36 (1970).

claim was contrary to the prejudice standard clearly established by the Supreme Court in
Strickland and Hill, Hines has satisfied the standard under § 2254(d)(1).

       (3) Is An Evidentiary Hearing Warranted?

       This Court notes that in Cullen v. Pinholster, 131 S.Ct. 1388 (2011), the Supreme Court
"h[e]ld that review under § 2254(d)(1) is limited to the record that was before the state court that
adjudicated the claim on the merits." Id. at 1398.  Neither Pinholster nor § 2254(d)(1) prohibit
this Court from considering evidence that may be heard in an evidentiary hearing in this case, as
Hines has satisfied § 2254(d)(1) by showing that the New Jersey courts' adjudication of his
ineffective assistance of counsel during plea negotiations claim was contrary to Strickland and
Hill.

       "In deciding whether to grant an evidentiary hearing, a federal court must consider
whether such a hearing could enable an applicant to prove the petition's factual allegations,
which, if true, would entitle the applicant to federal habeas relief." Landrigan, 550 U.S. at 474.
The Third Circuit has "interpreted this to require a petitioner to make a *prima facie* showing that
would enable [him] to prevail on the merits of the asserted claim." Morris v. Beard, 633 F.3d
185, 196 (3d Cir. 2011) (citation and internal quotation marks omitted); accord Han Tak Lee v.
Glunt, 667 F.3d 397, 406-07 (3d Cir. 2012).  However, "if the record refutes the applicant's
factual allegations or otherwise precludes habeas relief," no evidentiary hearing is required.
Landrigan, 550 U.S. at 474; see also Han Tak Lee, 667 F.3d at 406-07.

       In this case, Hines has made a *prima facie* showing that (1) counsel's incorrect advice
about his sentencing exposure was deficient performance under Strickland, and (2) but for the
inaccurate advice regarding his maximum sentencing exposure, there is a reasonable probability

that he and the trial court would have accepted the plea offer, and the sentence would have been less severe than the 60-year sentence, with 23 years of parole ineligibility, that was in fact imposed. See Lafler, 132 S.Ct. at 1385. And nothing in the record refutes Hines's factual allegations. See Han Tak Lee, 667 F.3d at 407.

As to performance, in Padilla v. Kentucky, 559 U.S. __, 130 S.Ct. 1473, 1484 (2010), the Supreme Court held that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the Strickland analysis") (internal quotation marks omitted). In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court "explicitly included 'the permissible range of sentences' as one of the factors that defendants must be aware of before pleading guilty." Jamison v. Klem, 544 F.3d 266, 277 (3d Cir. 2008) (quoting Boykin, 395 U.S. at 244, n.7); accord Brady v. United States, 397 U.S. 742, 748 n.6 (1970) ("The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of our recent decisions in McCarthy v. United States, [394 U.S. 459 (1969)], and Boykin v. Alabama).

This Court finds that Hines has satisfied Strickland's deficient performance prong: if Hines's counsel incorrectly advised him of his maximum sentencing exposure at the time he rejected the plea offer, then counsel's incorrect advice was clearly established deficient performance under Strickland, Hill, Boykin, and Padilla. See Jamison v Klem, 544 F.3d 266, 275-78 (3d Cir. 2008) (counsel's failure to advise § 2254 petitioner prior to entry of guilty plea that, as a consequence of the plea, he would be subject to a mandatory minimum sentence of five years and a fine was deficient under clearly established Supreme Court holdings in Strickland,

Hill, and Boykin v. Alabama, 395 U.S. 238 (1969)); Riggs v. Fairman, 399 F.3d 1179 (9th Cir.

2005) (§ 2254 relief warranted because defense counsel's failure to learn that defendant was

exposed to a potential 25-year-to-life sentence as a career offender fell below an objective

standard of reasonableness); Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001) (defense

attorney's misadvice during plea negotiations of potential sentencing exposure fell below

objective standard of reasonableness and, but for counsel's erroneous advice, there is a

reasonable probability that he would have accepted a plea); Baker v. Barbo, 177 F.3d 149, 154

(3d Cir. 1999) ("[A]n attorney who does not know the basic sentence for an offense at the time

that his client is contemplating entering a plea is ineffective") (section 2254 case); United States

v. Day, 969 F.2d 39,43 (3d Cir. 1992) (counsel's failure to correctly advise defendant of his

sentencing exposure during plea negotiations was deficient performance, since "[k]nowledge of

the comparative sentence exposure between standing trial and accepting a plea offer will often be

crucial to the decision whether to plead guilty").

As to prejudice, Hines has alleged that but for counsel's incorrect advice about his

sentencing exposure, there is a reasonable probability that he and the trial court would have

accepted the guilty plea, and he would have received a lower sentence under the plea than that

actually imposed.  The simple fact that Hines at one time proclaimed his innocence is a factor to

be considered in assessing the reasonable probability standard, but it is not the beginning and end

of the inquiry.  See Strickland, 466 U.S. at 698 ("[B]oth the performance and prejudice

components of the ineffectiveness inquiry are mixed questions of law and fact"); Cullen v.

United States, 194 F.3d 401, 405 (2d Cir. 1999) ("[T]he determination of likelihood that Cullen

would have accepted the plea bargain if he had been fully informed of its terms and accurately

40

advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one").

Accordingly, Hines has presented a *prima facie* ineffective assistance of counsel claim. See e.g., Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005) (§ 2254 relief warranted because defense counsel's failure to learn that defendant was exposed to a potential 25-year-to-life sentence as a career offender fell below an objective standard of reasonableness and petitioner's testimony that he would have accepted a plea but for counsel's deficient performance, coupled with the significant discrepancy between the plea and petitioner's exposure, satisfies the prejudice prong); Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001) (relief warranted under § 2254 where defense attorney's misadvice regarding potential sentencing exposure fell below objective standard of reasonableness and, but for counsel's erroneous advice, there is a reasonable probability that he would have accepted a plea); Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir. 2000) (prejudice requirement is satisfied where defendant testifies to his willingness to accept a reasonable plea bargain and a great disparity existed between the sentence exposure at trial and in the plea bargain); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (whether the government had made a formal plea offer is irrelevant to ineffective assistance claim because the petitioner was prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial); Day, 969 F.2d at 42 (reversing summary dismissal of claim that "had he been told of his true sentence exposure, he would have accepted the government's plea bargain offer and received a five-year sentence instead of the approximately twenty-two-year sentence that he now faces").

41

(4) Does 28 U.S.C. § 2254(e)(2) bar an evidentiary hearing?

Section 2254(e)(2) bars an evidentiary hearing where petitioner "has failed to develop the factual basis of a claim in State court proceedings," absent limited exceptions.  28 U.S.C. § 2254(e)(2).  "Therefore, § 2254(e)(2) bars a federal habeas court from holding an evidentiary hearing 'unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings[.]'" Han Tak Lee, 667 F.3d at 405 (quoting Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010)).  The first inquiry is "whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." Thomas v. Varner, 428 F. 3d 491, 498 (3d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)).  If the answer is no, then a court must determine if this is due to Petitioner's failure.  "In its customary and preferred sense, 'fail' connotes some omission, fault, or negligence on the part of the person who has failed to do something," and "a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." Williams, 529 U.S. at 431-32.  Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432.  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437.

In this case, Hines was diligent in his efforts to develop his ineffective assistance of plea counsel claim in state court by seeking an evidentiary hearing before the Law Division on his post-conviction relief petition (ECF No. 17-19), and asking the Appellate Division to remand for

an evidentiary hearing on this claim.[10]  See Han Tak Lee, 667 F.3d at 406.  The New Jersey

courts rejected Petitioner's ineffective assistance claim without hearing defense counsel's

testimony or conducting an evidentiary hearing, but development of the factual basis for an

ineffective assistance of counsel claim generally requires the testimony of counsel.  See Thomas

v. Varner, 428 F. 3d 491, 498 (3d Cir. 2005); Marshall v. Hendricks, 307 F. 3d 36, 115 (3d Cir.

2002).

    This Court finds that the factual basis of Petitioner's ineffective assistance of counsel

claim was not developed in the New Jersey courts and that Hines "made a reasonable attempt, in

light of the information available at the time, to investigate and pursue claims in state court . . . ."

Williams, 529 U.S. at 435.  Specifically, Hines filed his own affidavit, requested an evidentiary

hearing on the issue, and appealed the denial of an evidentiary hearing.  Hines is not at fault for

failing to develop the factual basis for his ineffective assistance of counsel claim and §

2254(e)(2) does not bar an evidentiary hearing.  See Han Tak Lee, 667 F.3d at 406; Thomas, 428

F. 3d at 498; Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000).  This Court will order an

evidentiary hearing to give Petitioner an opportunity to establish his claim.[11]

---

    [10] Petitioner's appellate brief argued that the convictions must be reversed due to
ineffective assistance of counsel or, "in the alternative, this matter must be remanded for an
evidentiary hearing because a prima facie case of ineffectiveness of counsel was established
[where] trial counsel misadvised defendant of his sentencing exposure."  (ECF No. 17-8 at 2.)
Petitioner further argued that his "March 7, 2005 affidavit, alluded to by the PCR court,
undermines the court's conclusion that defendant would not have pleaded guilty and moreover,
asserts his contention of being misadvised by trial counsel . . . .  [D]efendant's attesting that trial
counsel misadvised him of his sentencing exposure, and the likelihood that he would have
pleaded guilty, constituted a prima facie case of ineffectiveness, thereby warranting an
evidentiary hearing . . . ."  (ECF No. 17-8 at 14, 17.)

    [11] Petitioner, having placed at issue conversations he had with counsel regarding plea
(continued...)

43

(5) Appointment of Counsel

Habeas Rule 8(c) requires the appointment of an attorney to represent a petitioner who is financially eligible for appointment of counsel under 18 U.S.C. § 3006A(a)(2)(B) when the Court determines that an evidentiary hearing is warranted.  See 28 U.S.C. § 2254 Rule 8(c); United States v. Iasiello, 166 F.3d 212 (3d Cir. 1999).  The Court will accordingly appoint the Federal Public Defender to represent Petitioner.

H.  Ineffective Assistance of Counsel During Trial (Grounds Nine and Ten)

Hines argues in Grounds Nine and Ten that counsel was constitutionally ineffective in failing to testify to bolster the testimony of his alibi witness and failing to object to the prosecutor's characterization of his alibi witness as "practiced" and "well coached."  The Appellate Division rejected these grounds as follows:

> Defendant asserts in his second point that counsel was ineffective because she failed to withdraw during the trial and proffer her testimony to corroborate Hines's statement that she communicated defendant's alibi to counsel as early as November 1996.  Again, the key question is whether the purportedly deficient performance actually prejudiced the accused's defense.  Strickland, supra . . .
>
> As the PCR judge stated, the stipulation more than adequately filled the gap between Hines's testimony at the trial and the earlier proceeding.  Defendant's suggestion that had his trial attorney testified that Hines called her about the alibi defense in November 1996, the trial outcome would have been different is nothing more than speculation.  This claim also fails to meet the Strickland standard in any respect.
>
> Additionally, defendant's suggestion that such testimony would have been available from trial counsel is not supported by any affidavit or certification.  It would also be sheer speculation on our part to find in defendant's favor on this point based on the bare allegation that had the attorney withdrawn, her testimony

---

[11](...continued)
negotiations, has waived his attorney-client privilege as to relevant discussions with counsel, and this Court expects to hear testimony from counsel at the evidentiary hearing.

would have corroborated that of Hines.  Without such corroboration, defendant's contention is not a sufficient basis to find the outcome of the trial would have been different.  No ineffective assistance of counsel has been established on this basis either.

Lastly, defendant asserts his counsel was ineffective due to her failure to object to the prosecutor's characterization of his mother as a "practiced witness" and "well coached."  As we said on direct appeal, the "practiced witness" comment was reasonable in the context of the State presenting to jurors the significant question of Hines's credibility.  As the decision explains, to describe her as "well coached" was improper, but the reference "was fleeting and relatively inconsequential." Under the circumstances, we are satisfied this issue has been previously adjudicated, and defendant is therefore barred from raising the claim anew.

Hines, 2010 WL 1753316 at *2-*3 (citations omitted).

This Court finds that the New Jersey courts' rejection of Hines's ineffective assistance of trial counsel claims was not contrary to, or an unreasonable application of Strickland and its progeny.

## V.  CONCLUSION

Based on the foregoing, this Court denies habeas relief on all grounds except the ineffective assistance of counsel during plea negotiations claim (Ground Eight), orders an evidentiary hearing on this claim, and appoints an attorney from the Federal Defender's Office to represent Petitioner.

_____
DENNIS M. CAVANAUGH, U.S.D.J.

Dated: _____, 2013

45