NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY HINES, | Civil Action No. 10-4130 (DMC) |
| Petitioner, | |
| v. | OPINION |
| MICHELLE RICCI, et al., | |
| Respondents. | |

**APPEARANCES**:

> PETER MICHAEL CARTER
> OFFICE OF THE FEDERAL PUBLIC DEFENDER
> 972 Broad Street
> Newark, New Jersey 07102
> Attorney for Petitioner

> SARA BETH LIEBMAN
> UNION COUNTY PROSECUTOR'S OFFICE
> 32 Rahway Avenue
> Elizabeth, New Jersey 07202
> Attorneys for Respondents

**CAVANAUGH, District Judge**:

Gregory Hines seeks a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, vacating a judgment of conviction and sentence of 60 years in prison, with 23 years of parole ineligibility. On January 7, 2000, Hines was sentenced to these terms in the Superior Court of New Jersey, Union County, after a jury found him guilty of the first-degree armed robbery of Patricia Vega while she was delivering newspapers on November 9, 1996, and of third-degree possession of a weapon for an unlawful purpose. In an Opinion filed on March 16, 2013, this Court found that the New Jersey courts' adjudication of Hines's ineffective assistance of counsel in plea negotiations claim was

contrary to, or an unreasonable application of *Strickland v. Washington,* 466 U.S. 668, 694 (1984), and *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).[1]   *See Hines v. Ricci,* 2013 WL 1285290 (D.N.J. Mar. 26, 2013) ("*Hines I*"); 28 U.S.C. 2254(d)(1).   The New Jersey Appellate Division, the last state court to explain its reasoning, had rejected Hines's ineffective assistance of counsel in plea negotiations claim without conducting an evidentiary hearing based on its determination that Hines "cannot prove any prejudice from the alleged failure of counsel to provide him with an accurate explanation of his sentencing exposure because he continues to maintain his innocence." *State v. Hines,* 2010 WL 1753316 at \*2 (N.J. Super. Ct., App. Div., May 3, 2010), *certif. denied,* 203 N.J. 96 (2010) (table).   Because the prejudice standard enunciated by the Supreme Court in *Strickland* and *Hill* requires a defendant to show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the outcome of the plea process would have been different, *Lafler v. Cooper,* 132 S.Ct. 1376, 1384 (2012), and because "[a]n inquiry solely involving whether or not Hines proclaimed innocence . . . is not the correct means by which to address prejudice when assessing a claim of ineffective assistance of counsel in the plea negotiation process," this Court held in *Hines I* that the New Jersey courts' adjudication of Hines's ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law.   In other words, this Court found that the Appellate Division failed to apply the reasonable probability standard for determining

---

[1] This Court also denied habeas relief on the other nine grounds raised in Hines's *pro se* § 2254 Petition.

prejudice set forth by the Supreme Court in *Strickland* and *Hill*.[2]   *Hines I* at *21; *see* 28 U.S.C. 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 397 (2000) (holding that Virginia Supreme Court's adjudication of ineffective assistance claim was contrary to or an unreasonable application of Strickland's reasonable probability standard for prejudice where the Virginia court ruled that a mere difference in outcome is not sufficient to find prejudice); *Magana v. Hofbauer*,, 263 F.3d 542, 550 (6th Cir. 2001) (holding that, by placing a burden of proof on defendant which was more exacting than a reasonable probability to determine prejudice, Michigan Court of Appeals' adjudication of ineffective assistance during plea negotiations claim was contrary to clearly established Supreme Court precedent); *Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001) (holding that it was contrary to clearly established Supreme Court precedent for state court to require petitioner to prove prejudice under *Strickland* by preponderance of the evidence); *Mask v. McGinnis*, 233 F.3d 132, 140 (2d Cir. 2000) (concluding that state court's failure to employ reasonable probability standard to evaluate ineffective assistance during plea negotiations claim unreasonably applied clearly established Supreme Court precedent).[3]

---

[2]  *See* 28 U.S.C. § 2254(d)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.")

[3]  This Court notes that the Supreme Court's recent ruling in *Burt v. Titlow*, 134 S.Ct. 10 (2013), does not affect this Court's finding that Hines satisfied 28 U.S.C. § 2254(d)(1) nor does it affect the outcome of this proceeding.   In that case, Titlow had entered a guilty plea to murder, but fired the attorney who had negotiated the plea and hired a new attorney because Titlow continued to claim, after entering his guilty plea, that she did not actually assist in the murder to which she had pled guilty.   The new attorney, accordingly, withdrew the plea, and Titlow was convicted of murder after a trial.   Titlow argued to the Michigan courts that her new attorney was deficient for advising

In addition, this Court found that Hines was entitled to an evidentiary hearing in this Court on his ineffective assistance of counsel in plea negotiations claim. Specifically, this Court determined that Hines had made a *prima facie* showing that counsel's incorrect advice regarding his maximum sentencing exposure at the time he rejected the State's plea offer constituted deficient performance under *Strickland, Hill,* and *Boykin v. Alabama,* 395 U.S. 238, 244 n.7 (1969).[4] This Court further

---

Titlow to withdraw the guilty plea "without taking time to learn more about the case, thereby failing to realize the strength of the State's evidence," and the trial court conducted a hearing on Titlow's claim. *Titlow,* 134 S.Ct. at 14. On direct appeal from the conviction, the Michigan Court of Appeals rejected the claim based on its finding that the new attorney "acted reasonably in light of his client's innocence[, given that Titlow's] decision to hire [the new attorney] was set in motion by [her post-guilty-plea] statement to a sheriff's deputy that [she] did not commit the offense." *Id.* (internal quotation marks omitted). The district court denied habeas relief on the ground that the Michigan courts' factual and legal determinations did not violate 28 U.S.C. 2254(d), and the Sixth Circuit reversed on two grounds, *i.e.,* (1) the fact finding of the Michigan Court of Appeals - that the withdrawal of the plea was based on Titlow's post-guilty-plea assertion of innocence - was an unreasonable factual determination in light of the record, and (2) there was no evidence that the new attorney fully informed Titlow of the consequences of withdrawing the plea. *Id.* The Supreme Court reversed the Sixth Circuit on both grounds, holding that "the Sixth Circuit failed to apply th[e] doubly deferential standard [of § 2254(d)] by refusing to credit a state court's reasonable factual finding and by assuming that counsel was ineffective where the record was silent." *Id.* at 13. *Titlow* is inapposite to Hines's case because the New Jersey courts did not make any factual findings concerning counsel's deficient performance or prejudice, but rejected the claim without an evidentiary hearing by applying a prejudice standard that was contrary to the "reasonable probability" standard enunciated by the Supreme Court.

[4] *See Jamison v Klem,* 544 F.3d 266, 275-78 (3d Cir. 2008) (counsel's failure to advise § 2254 petitioner prior to entry of guilty plea that, as a consequence of the plea, he would be subject to a mandatory minimum sentence of five years and a fine, was deficient under clearly established Supreme Court holdings in *Strickland, Hill,* and *Boykin*); *Baker v. Barbo,* 177 F.3d 149, 154 (3d Cir. 1999) ("[A]n attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective") (section 2254 case); *United States v. Day,* 969 F.2d 39,43 (3d Cir. 1992) (counsel's failure to correctly advise defendant of his sentencing exposure during plea negotiations was deficient performance, since "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty").

held that Hines made a *prima facie* showing that there is a reasonable probability that, if Hines had received competent advice during the plea process, the outcome of the plea process would have been different and Hines would have received a lower sentence.[5]  *See Hines I*, at *22-*23.  After also determining that 28 U.S.C. § 2254(e)(2) did not bar an evidentiary hearing, this Court ordered an evidentiary hearing and appointed counsel to represent Hines.  *Id.* at *23-*25.

This Court conducted the evidentiary hearing on October 22, 2013.  *See Hines v. Ricci,* Civ. No. 10-4130 (DMC) transcript of hearing (D.N.J. Oct. 22, 2013) (ECF No. 39) ("Transcript"). Hines called Lorraine Stanley, the attorney who represented him during plea negotiations and at trial in the state court, and Hines testified himself.  The State called no witnesses.  The parties filed letter briefs after receiving the transcript of the evidentiary hearing.  This Opinion sets forth this Court's findings of fact and conclusions of law.  For the reasons explained below, this Court will grant a Writ of Habeas Corpus to Gregory Hines directing the State to reoffer Hines the plea agreement, which provided for a 16-year term of incarceration, with eight years of parole ineligibility, and waiver of an extended term sentence.  *See Lafler,* 132 S.Ct. at 1391 ("The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement.")

---

[5] Hines alleged that, if counsel had advised him during plea negotiations that he could have received a maximum term of life in prison by being convicted after a trial, he would have accepted the plea and received a sentence much less than the 60-year extended sentence that was imposed.  (ECF No. 17-8 at 86-88.)  *See Day,* 969 F.2d at 42 (reversing summary dismissal of ineffective assistance of counsel during plea negotiations claim where Day alleged that, "had he been told of his true sentence exposure, he would have accepted the government's plea bargain offer and received a five-year sentence instead of the approximately twenty-two-year sentence that he now faces.")

## I. BACKGROUND

This Court will not repeat the procedural and factual background outlined in its prior Opinion, but will refer in this section only to facts in the record or otherwise undisputed, which are material to Hines's ineffective assistance during the plea process claim. At about 9:21 p.m. on November 9, 1996, Elizabeth, New Jersey, police arrested Hines on charges of receiving stolen property and fraudulent use of a credit card. *See State v. Hines,* Docket No. A-3896-99T4 (N.J. Super. Ct., App. Div., Nov. 20, 2001) ("Direct Appeal Opinion" at ECF No. 17-3). As the police were aware of several unsolved robberies in the same neighborhood during the prior months, on November 14, 1996, an assistant prosecutor made an *ex parte* application to Superior Court Judge Barisonek to compel Hines, who was being held on the credit card charges at the Union County Jail, to appear in a lineup at the jail. *Id.* Judge Barisonek granted the request, and during the November 15, 1996, lineup, Patricia Vega and two other victims identified Hines. *Id.* Vega identified Hines as the man who robbed her, while he brandished a pocket knife, of her newspaper collection envelopes during the early morning hours of November 9, 1996, as she delivered newspapers to an apartment building in Elizabeth, New Jersey. *Id.* As a result of these positive identifications, additional criminal complaints were issued against Hines on November 18, 1996, including a complaint concerning the "Vega robbery," which is the subject of this § 2254 Petition. *Id.* Hines was later named in five separate indictments for robbery and burglary, including the Vega robbery. (Plea Bargain Approval Form, Petitioner's GH-1 in evidence.) Those indictments were: 97-02-00202 charging Hines with the robbery of James Morris ("the Morris case"); 97-02-00214 charging Hines with unlawful use of a credit card; 97-02-00216 charging Hines with an unspecified

burglary; 97-02-00223 charging Hines with the Vega robbery; and 97-03-00243 charging Hines with an unspecified robbery. *Id.*

The parties do not dispute that Lorraine Stanley, the Deputy Public Defender who represented Hines at that time, received a Plea Bargain Approval Form from the State with discovery materials, and that she forwarded this form to Hines. The Plea Bargain Approval Form was entered into evidence without objection at the evidentiary hearing. (Plea Bargain Approval Form, Petitioner's GH-1 in evidence) ("Plea Bargain" or "Plea Offer"). The Plea Bargain offered Hines an aggregate sentence of 32 years on five indictments, including a 16-year term for the Vega robbery, as well as the State's waiver of an extended term sentence:

| | |
|---|---|
| 97-02-00202 ("Morris robbery") | 16 years, 8 without parole eligibility; |
| 97-02-00214 | Five years, concurrent to 97-02-00202; |
| 97-02-00216 | Five years, concurrent to 97-02-00202; |
| **97-02-00223 ("Vega robbery")** | **16 years, 8 without parole eligibility, consecutive** |
| 97-03-00243 | Eight years, concurrent to 97-02-00202. |

(Petitioner's Exhibit GH-1 marked in evidence)

It is not disputed that, through Ms. Stanley, Hines rejected the above described Plea Bargain. Nor is it disputed that later, at a pretrial conference, the State offered Hines the same Plea Bargain, but with the period of parole ineligibility reduced to a total of 12 years on the Morris and Vega robberies, and that Hines again rejected the Plea Offer. There is also no dispute that the State first tried Hines for the Morris robbery, Indictment 97-02-00202, which resulted in an acquittal.

The trial of Hines on the Vega robbery, Indictment 97-02-00223, took place next, over four days in July 1999. Hines did not testify. He presented the same alibi defense at the Vega trial that

he had successfully presented at the Morris trial, *i.e.,* he was in Atlantic City with his mother and a friend, but this time the jury rejected the alibi defense and found Hines guilty of the first-degree robbery of Vega and third-degree possession of a weapon (pocket knife) for an unlawful purpose.

On July 30, 1999, two days after the verdict, the State filed a motion in the Law Division for imposition of an extended term under New Jersey's three strikes statute, N.J. STAT. ANN. § 2C:43-7.1(b), and New Jersey's persistent offender statute, N.J. STAT. ANN. § 2C:44-3(a).[6] (Motion for Extended Term, ECF No. 17-1 at 62.) Ms. Stanley testified at the evidentiary hearing that her representation of Hines terminated shortly after the guilty verdict was returned on July 28, 1999, as a result of a letter Hines wrote to her superior at the Public Defender's Office in which he expressed dissatisfaction with her representation and requested a new attorney. (Hearing Transcript, pp. 8, 19.) Hines was then represented by attorney John Cito.

The record establishes that on November 9, 1999, while represented by John Cito, Hines signed two plea forms whereby he resolved the final three indictments referred to in the original Plea Offer. (Plea Forms, ECF No. 17-1 at pp. 70-76.) Hines agreed to plead guilty to third-degree unlawful use of a credit card under Indictment 97-02-00214 and third-degree burglary under Indictment 97-02-00216. In exchange, the remaining counts in those indictments were dismissed.

---

[6] Under the versions of these statutes in effect at the time of the Vega robbery in 1996, the extended term for first-degree robbery was 20 years to natural life without parole, "[e]xcept that a defendant who is at least 70 years of age and who has served at least 35 years in prison pursuant to a sentence imposed under this section shall be released on parole if the full Parole Board determines that the defendant is not a danger to the safety of any other person or the community." N.J. STAT. ANN. § 2C:43-7.1(e) (eff. June 22, 1995); *see also* N.J. STAT. ANN. §§ 2C:-43-7.1(b); 2C:44-3a; 2C:43-7(a)(2).

In addition, the State dismissed Indictment 97-03-00243, and agreed to recommend a sentence of 5 years in prison, with 2.5 years of parole ineligibility, on Indictments 97-02-00214 and 00216, to run concurrently with each other. Both of these sentences were to run consecutively to the sentence to be imposed for the Vega robbery. *Id.* Although it is not included in the record, it is evident from the sentencing transcript of January 7, 2000, that the Law Division accepted these guilty pleas.[7]

On January 7, 2000, Superior Court Judge Scott J. Moynihan sentenced Hines on the Vega robbery, as well as the guilty pleas on indictments 97-02-00214 and 97-02-00216. For the Vega robbery, Judge Moynihan granted the motion for an extended term under the three strikes statute and the persistent offender statute, and imposed a 60-year extended term, with 23 years of parole ineligibility; in accordance with the plea agreements respecting the other untried indictments which were the subject of the Plea Offer, Judge Moynihan dismissed Indictment 97-03-00243 and imposed 5-year concurrent terms, with 2.5 years of parole ineligibility, on Indictment 97-02-00214 (unlawful use of a credit card) and Indictment 97-02-00216 (third-degree burglary), to run consecutively to the 60-year term imposed for the Vega robbery. *See State v. Hines,* Ind. 97-02-0223 transcript (N.J. Super. Ct., Law Div., Jan. 7, 2000) (ECF No. 17-18; *see also* ECF No. 17-1 at pp. 77, 79, 81). With this background in mind, the Court now turns to the evidentiary hearing.

--------------------------------

[7] The January 7, 2000, sentencing transcript indicates that, sometime between November 9, 1999, and January 7, 2000, the Law Division accepted Hines's guilty pleas on these indictments. *See State v. Hines,* Ind. 97-02-0223 transcript (N.J. Super. Ct., Law Div., Jan. 7, 2000) (ECF No. 17-18 at 26-28).

## II.  EVIDENTIARY HEARING:  FINDINGS AND LEGAL CONCLUSIONS

To establish ineffective assistance of counsel in the plea negotiation context, Hines must show:  (1) counsel's advice regarding the Plea Offer was not "'within the range of competence demanded of attorneys in criminal cases,'" *Hill,* 474 U.S. at 56 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)), and (2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler,* 132 S.Ct. at 1385.

Since this Court has held, in accordance with 28 U.S.C. § 2254(d)(1), that the New Jersey courts' failure to apply the reasonable probability standard of *Strickland* and *Hill* to adjudicate prejudice was contrary to, or an unreasonable application of clearly established Supreme Court holdings,[8] this Court must now conduct a *de novo* review of the merits of Hines's claim.  *See Williams,* 529 U.S. at 396-98 (conducting *de novo* review of ineffective assistance claim after finding that the state court's adjudication was contrary to clearly established Supreme Court precedent); *Real v. Shannon,* 600 F.3d 302, 308 (3d Cir. 2010) ("[W]here a state prisoner surmount[s] 2254(d)'s bar to habeas relief by showing that the state court's decision is contrary to federal law, the federal courts

_____

[8] *See* n. 4 *supra.*

10

must review the prisoner's claim *de novo* under the correct federal standard.") (citations and internal quotation marks omitted).

A.   Deficient Performance

This Court found in its prior Opinion that, "if Hines's counsel incorrectly advised him of his maximum sentencing exposure at the time he rejected the [P]lea [O]ffer, then counsel's incorrect advice was clearly established deficient performance under *Strickland, Hill, Boykin* and *Padilla [v. Kentucky,* 559 U.S. ____, 130 S.Ct. 1473 (2010)]." *Hines I* at \*23.

At the evidentiary hearing, Hines testified that Ms. Stanley did not advise him, prior to his rejection of the Plea Offer on two occasions, that if he rejected the Plea Offer and he was convicted at trial, he faced a maximum sentence of life in prison.   He acknowledged that he knew an "extended term" was possible, but maintained that Ms. Stanley never explained than an extended term, in his case, equated to life.   Specifically, he testified:

> Ms. Stanley said, Well, you know that you are facing an extended term.   I said, Yeah, I see that on the plea offer.   So if I were to get an extended term, what type of time are we talking about?   And she said they could – and I quote – they could double your sentence.   And then I went on to say, Well, listen, I mean, I mean, if they – if they can double my sentence, they're offering me 32 with a 16 off of – off of a 32-year sentence, I am going to do 20.

(Transcript, pp. 32-33.)

Ms. Stanley's testimony did not refute or contradict Hines's testimony on this point.   When asked on direct and cross examination if she recalled discussing with Hines what an extended term meant, or advising him of the maximum sentence he could face if convicted, Ms. Stanley answered unequivocally that she had no recollection of either.   (Transcript, p. 15, lines 7-21; 22-24.)   Ms. Stanley further testified on direct examination that she did recall Hines telling her that he thought the plea offer of two consecutive 16-year terms was too high.   (Transcript, p. 16.)   Ms. Stanley

11

testified that, after the first Plea Offer, at a pretrial conference, the State "changed the offer so that the maximum . . . period of parole [in]eligibility was reduced to 12." (Transcript, p. 19.) Finally, Ms. Stanley testified on direct that her representation of Hines terminated "right after the guilty verdict" in the Vega case because Hines complained to her supervisor, and she did not represent Hines at sentencing on January 7, 2000. (Transcript, p. 8 at 16-24.)

This Court believes Hines's uncontradicted testimony that Ms. Stanley did not inform him that he faced a life sentence if he rejected the Plea Offer and was convicted. Moreover, there is no record evidence to support a finding that Hines knew that he faced a life sentence when he rejected the Plea Offer.[9] His testimony was credible and uncontradicted on this point. Accordingly, this Court holds that Hines has satisfied the deficient performance prong of the *Strickland/Hill* inquiry.

B. Prejudice

As illustrated above, the performance prong is easily satisfied; however, a more nuanced discussion centering on the reasonable probability standard is required to properly analyze the prejudice prong. To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Strickland,* 466 U.S. at 693. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (citations omitted). As noted, in the plea context, this means that the petitioner must show that, had his counsel advised him that rejection of the plea would expose him to a life sentence, there is a

_____

[9] No evidence was presented at the evidentiary hearing to support such a finding and this Court was not able to locate evidence in the record indicating that Hines was otherwise made aware of his sentencing exposure, nor has the State cited any such evidence.

reasonable probability that several events would have followed. *See Lafler,* 132 S.Ct. at 1384. First, he would have accepted the plea offer. Second, the prosecution would not have withdrawn the plea offer. Third, the trial court would have accepted the plea agreement terms. And, finally, the conviction or sentence under the plea agreement terms would have been less severe than was the sentence received as a result of proceeding to trial.

(1) A Reasonable Probability That Hines Would Have Accepted the Plea Offer

Regarding whether Hines would have accepted the Plea Offer, Hines testified at the evidentiary hearing that he rejected the plea, at the time the plea was offered, because he saw little difference between a 40-year sentence after a conviction and a 32-year sentence after a plea. (Transcript at 33 ("I see no difference from the 40 and the 32."))

In response to a subsequent question on direct examination asking him to explain his thinking regarding the Plea Offer, Hines again testified that he weighed the benefits of the Plea Offer against the risks, and he rejected it because the difference between the sentences was insignificant:

> Well, because they're offering 32 with a 16. I have a homicide on my jacket, okay? I've done time before. I kind of know how the Parole Board works. If I cop out to 32 years, I'm going to do close to 20 or half of the 32, or a little over half of the 32. Off of a 40-year sentence, I'm going to do 20 years. So I didn't see any difference from the 40 years and the 32 years with a 16, and I expressed that to Ms. Stanley.

(Transcript, p. 34.)

Hines testified that he considered the benefit of the Plea Offer a second time when Ms. Stanley told him during a pretrial conference that the State was willing to drop the mandatory minimum portion of the offer from 16 to 12 years. He testified that he responded to her, "Well, no, because – no, they have to drop the back number, because the back number is too high, because off

of a 32-year sentence, I'm going to do 20 years. That's the way I explained it. And they would

not drop the back number." (Transcript at 35.)

Hines further testified on direct examination that he would have accepted the State's Plea

Offer, had he known that he faced a life sentence if convicted:

> Q. And at that point, did life, 60, 50 presumptive ever come up?
>
> A. Had Ms. Stanley told me or had I heard the word "life," okay, we would not be here today, because I have a homicide on my jacket. Me getting a life sentence is, I could spend the rest of my life in prison. Life does not have a max like any other sentence . . . . I would never get out of prison. Or that was my belief, anyway.
>
> Q. So let me ask you this question, then. Had Ms. Stanley – what would have happened if Ms. Stanley had told you you were facing a life sentence, presumptive 50 or even 60, if she had told you that in the first meeting?
>
> A. I would have instructed Ms. Stanley to accept the offer . . . . Because I could not go to prison for life. I will reiterate: I have a homicide on my jacket. I would spend the rest of my life in prison. Life does not have a max. They can hit me from now on, and they would.

(Transcript at 36-37.) Again, Hines testified at the conclusion of his direct examination: "If I

knew – when me and Ms. Stanley met for the first time, had I knew I was facing a life sentence, I

would not have went to trial, any trial, no trial. I would not have risked getting a life sentence under

no circumstances." (Transcript at 39.)

On cross examination, the first question the State's attorney asked Hines was, "So, Mr.

Hines, you would have lied to the Court in taking your plea," and Hines responded "Absolutely not."

(Transcript at 39.)[10]   This line of questioning continued until this Court intervened and, in response

---

[10] The State's attorney asked several iterations of this question, presumably seeking to elicit testimony that the true reason Hines did to accept the Plea Offer was because he maintained his innocence. Under this theory, the State reasons that Hines would not have accepted the Plea Offer.

to the Court's questioning, Hines testified that, but for counsel's incorrect advice about his sentencing exposure, he would have pled guilty and testified truthfully that he committed the Vega robbery, as he did when he pled guilty to 97-02-00214 and 00216 while represented by his next counsel. (Transcript at 43.)

This Court finds that Hines's testimony that he would have accepted the Plea Offer and truthfully admitted guilt to the Vega robbery, but for counsel's deficient performance, is consistent with, and corroborated by three undisputed facts. First, there is the disparity between the sentence offered in the Plea Bargain (a 16-year sentence for the Vega robbery and a 32-year aggregate sentence for all five indictments) and the potential sentencing exposure after trial (a life sentence).[11] Second, as Hines acknowledged at the evidentiary hearing, one of his prior crimes is a felony murder, and the severity of this prior offense increased the risk that the judge would impose a life sentence on Hines if he went to trial. (Transcript at 28.) Third, following the verdict in the Vega robbery, Hines entered guilty pleas on two of the three remaining indictments listed in the Plea Offer, 97-02-00214 and 00216.[12] These facts are consistent with Hines's testimony that he would have accepted the Plea Offer and bolster his credibility.

The State nevertheless argues that Hines has not met his burden of showing prejudice because "[w]hat is now clear is that petitioner would not have accepted a plea deal under any

---

[11] *See Smith v. United States,* 348 F.3d 545, 552 (6th Cir. 2003) (collecting cases for the proposition that "the disparity between the plea offer and the potential sentence exposure as strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer").

[12] As outlined above, Hines resolved the three remaining indictments on November 9, 1999, in a plea bargain by pleading guilty to one count in each of two indictments and dismissal of the third outstanding indictment.

circumstances," presumably because he was innocent. (State's Letter Brief, ECF No. 35 at 1.) While Hines's post-conviction relief submissions, when considered out of context, might lend support to this view, the Court does not find this evidence persuasive, nor does it undermine Hines's credibility. As noted in *Hines I,* Hines stated in his post-conviction papers before the state court that, when Ms. Stanley discussed the Plea Offer, which included guilty pleas to charges in five indictments,

> I informed counsel that I wouldn't plead to these trumped up charges since I didn't rob anyone, and counsel's response was that I was facing an Extended Term if I went to trial and was convicted. At this point I asked counsel what type of time was I facing if I were to get the Extended Term, [as] I still had to consider the offer based on counsel's advice . . .

*Hines I* at *19-20 (quoting ECF No. 17-8).

On redirect, at the evidentiary hearing before this Court, Hines explained why he used the words "trumped-up charges" in his post-conviction relief submission as follows: "I used the term 'trumped-up charges' because during my interrogation, the detective was telling me, We gonna – you know, we are going to put charges on you, this, that, you know, and – and that's where that term came from." (Transcript at 48.)[13] In light of this testimony, the Court does not read Hines's post-conviction submission as an unequivocal profession of factual innocence. Understood in context, the Court reads this statement as protesting the State's use of an *ex parte* lineup to gather evidence against him for crimes unrelated to his arrest. Thus, contrary to the State's contention, this

---

[13] This makes sense given that Hines was arrested and detained on credit card charges, but the State added the additional charges after obtaining an *ex parte* court order directing that he participate in a lineup concerning several unrelated robbery and burglary charges.

evidence does not support a finding that Hines would not have "accepted a plea deal under any circumstances."

More importantly, the State is arguing that Hines's profession of innocence in his post-conviction relief submission means that he would not have accepted the Plea Offer, even if counsel had not performed deficiently. This argument is neutralized, even undermined, by the fact that Hines professed innocence to all five indictments, but he ultimately did plead guilty to two of the indictments listed in the Plea Offer, with the final indictment being dismissed by the State as part of the plea agreement. As the Supreme Court emphasized in *Frye,* a defendant's subsequent acceptance of a later plea offer provides strong support for a finding that there is a reasonable probability that the defendant would have accepted the prosecutor's original offer of a plea bargain, if counsel had properly advised him.[14] *See Frye,* 132 S.Ct. at 1411.

Finally, while Ms. Stanley testified that Hines maintained his innocence of the charges in the Plea Offer, (Transcript at 15, 26), she acknowledged in her testimony that she recalled Hines telling her that he thought the Plea Offer was too high (Transcript at 16). This sort of reasoning, on Hines's part, is not characteristic of a person who would maintain his innocence at all costs.

As explained above, the evidence shows that, when the pleas were offered, Hines weighed the benefits of the Plea Offer against the risks of going to trial and being convicted. Moreover, as this Court noted in its prior Opinion, professions of innocence are not dispositive of the question of whether a petitioner has shown a reasonable probability that he would have accepted a plea offer, but

---

[14] The fact that the trial court accepted Hines's guilty pleas also strongly suggests that the trial court would have accepted the prosecutor's original Plea Offer, despite Hines's prior professions of innocence. *See* Section II(B)(2) *infra.*

for counsel's deficient advice. *See Hines I at 21 n.9.*[15]   This Court agrees with the reasoning of the

Sixth Circuit:

> Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government.   It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea.   It therefore does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. Furthermore, a defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment.

*Griffin v. United States,* 330 F.3d 733, 738 (6th Cir. 2003).

The State further argues that that this Court should deny habeas relief because, "[w]hat

petitioner would not admit was that had he pled guilty, he would have provided false testimony to the

court.   That is, although petitioner acknowledged that if he accepted the plea deal he would have

had to admit that he committed the robberies, he would not admit that such an allocution would have

been false."   (State's Letter Brief, ECF No. 35 at 3.)   As the State, acknowledges, Hines did <u>not</u>

testify at the evidentiary hearing that he was innocent of the Vega robbery charge.   More

importantly, Hines's factual guilt or innocence is not part of *Strickland*'s two-part standard:   the

---

[15] *See also Griffin v. United States,* 330 F.3d 733, 738 (6th Cir. 2003) ("These declarations of innocence are therefore not dispositive on the question of whether Griffin would have accepted the government's plea offer."); *United States v. Gordon,* 156 F.3d 376, (2d Cir. 1998) (holding that, despite defendant's protestations of innocence, his statement that he would have accepted the plea but for his attorney's incorrect advice about sentencing exposure, combined with the disparity between the sentencing exposure and the sentence offered in the plea, showed a reasonable probability that defendant would have accepted the plea if he had received competent advice); *Wheeler v. Rozum,* 410 F.App'x 453, 458 (3d Cir. 2010) (observing that those courts of appeals that have considered the question have recognized that protestations of innocence are relevant to, but not dispositive of the issue of prejudice); *Lalani v. United States,* 315 F.App'x 858, 861 (11th Cir. 2009) ("[T]he petitioner's repeated declarations of innocence do not prove, as the government claims, that he would not have accepted a guilty plea.") (citation and internal quotation marks omitted).

prejudice issue under *Strickland* is whether or not there is a reasonable probability that, but for counsel's deficient performance, Hines would have accepted the Plea Offer, the Law Division would have accepted the plea agreement, and Hines would have received a lower sentence than he in fact got. This Court finds that, in light of the totality of the evidence, there is a reasonable probability that Hines would have accepted the Plea Offer and admitted guilt if he had received competent advice.

> (2) A Reasonable Probability that the Prosecution and the State Court Would Have Proceeded with the Plea

This Court must also consider whether there is a reasonable probability that the State would not have withdrawn the Plea Offer and that the State judge would have accepted the plea agreement. The facts that the State offered pleas on Hines's remaining indictments and the State court judge accepted Hines's guilty pleas on these indictments strongly suggest that there is at least a reasonable probability that the prosecution would not have withdrawn the offer and that the State court judge would have accepted it.[16] The State's re-offer of the plea (with a reduced 12-year period of parole ineligibility) during a pretrial conference also indicates that the prosecutor would not have withdrawn the offer.

> (3) A Reasonable Probability that a Less Severe Sentence Would Have Been Imposed

If the State court had accepted the Plea Offer, Hines would have received an aggregate 32-year sentence, consisting of 16 years, with eight years of parole ineligibility, for the Vega

---

[16] If counsel had properly advised Hines, she would have told him that the State court could not and would not accept his guilty plea unless he admitted guilt and testified under oath concerning the factual basis for the plea. *See* N.J. Ct. R. 3:9-2.

19

robbery, and a consecutive 16-year term, with eight years of parole ineligibility, for the Morris robbery. As stated above, Hines received a 60-year sentence, with 23 years of parole ineligibility, for the Vega robbery. Since this Court has already found that there is a reasonable probability that the State court would have accepted the terms of the Plea Offer, it follows that there is also a reasonable probability that Hines would have received a less severe sentence, but for counsel's deficient performance.

After considering the testimony at the evidentiary hearing and the totality of the record, this Court finds that there is at least a reasonable probability that, but for counsel's deficient performance, Hines would have accepted the Plea Offer (of 16 years for the Vega robbery, eight without parole eligibility), the State court would have accepted the negotiated plea agreement, and the State court would have imposed a sentence lower than the 60 years in prison Hines received. *See Lafler,* 132 S.Ct. at 1390, 1391 ("By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law," and respondent has satisfied Strickland's two-part test, as the State has conceded deficient performance and "respondent has shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea."); *Magana v. Hofbauer,* 263 F.3d 542 (6th Cir. 2001) (reversing denial of § 2254 petition, finding that, by applying a higher standard of proof than reasonable probability, state court's adjudication violated § 2254(d)(1), and holding that the record conclusively demonstrates that petitioner was denied effective assistance of counsel under the reasonable probability standard when he was considering the state's plea offer); *cf. United States v. Gordon,* 156 F.3d 376 (2d Cir. 1998) (holding that § 2255 movant was entitled to relief because counsel's underestimation of maximum potential sentence was

deficient performance and there was a reasonable probability that Gordon would have accepted the plea offer and received a lower sentence, despite his professions of innocence).

This Court makes one final note concerning the burden of proof. The burden of proof in a case like this is quite low. As explained by the Third Circuit in *United States v. Day,*

> Day need not prove with absolute certainty that he would have pleaded guilty, that the district court would have approved the plea arrangement, and that he therefore would have received a lesser sentence. *Strickland v. Washington* does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that that is the case.

*Day,* 969 F.2d at 45 n.8. Hines did not have to prove that it is more likely than not that he would have accepted the Plea Offer and received a lower sentence but for counsel's deficient advice. He only had to show that there is at least a reasonable probability that he would have accepted the Plea Offer and the trial court would have accepted the plea agreement, resulting in a less severe sentence, a task he has unquestionably met. Accordingly, this Court will grant Hines's Petition for a Writ of Habeas Corpus.

## III.   REMEDY

"Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364 (1981). "[A] remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler,* 132 S.Ct. at 1389 (quoting *Morrison,* 449 U.S. at 364). In *Lafler,* the Supreme Court held that the correct remedy in a plea offer case is to order the State to reoffer the plea agreement. *Id.* at 1391.

Following *Lafler's* directive, this Court will grant Hines a Writ of Habeas Corpus and direct the State to reoffer Hines the original Plea Offer on the Vega robbery, *i.e.*, 16 years of incarceration with eight years of parole ineligibility and waiver of an extended sentence, in exchange for his guilty plea to first-degree robbery. *See* Plea Bargain Approval Form, GH-1 in evidence; *see also Lafler*, 132 S.Ct. at 1391. This Court will administratively terminate this case but will order the State to report to this Court the outcome of the proceeding before the Law Division. *Cf. Blackledge v. Perry*, 417 U.S. 21, 27 (1974); *Turner v. State of Tenn.*, 940 F.2d 1000, 1001-1002 (6th Cir. 1991) (cited with approval in *Day*, 969 F.2d 47).

## IV.   CONCLUSION

Based on the foregoing, this Court finds that Hines has satisfied *Strickland's* two-part test, grants a Writ of Habeas Corpus to Hines, and orders the State to reoffer the plea agreement consisting of 16 years, with eight years of parole ineligibility and waiver of an extended term.

**DENNIS M. CAVANAUGH, U.S.D.J.**

DATED: January _____ 28 _____, 2014

22